UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JESSICA C. WILSON,

                             Plaintiff,

        -v-                                              1:14-CV-27

CITY OF GLENS FALLS and WILLIAM F.
HOLMES, Police Officer,

                             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

OFFICE OF GREGORY V. CANALE               GREGORY V. CANALE, ESQ.
Attorneys for Plaintiff
456 Bay Road
Queensbury, NY  12804

CARTER, CONBOY, CASE, BLACKMORE           JAMES A. RESILA, ESQ.
    MALONEY & LAIRD, P.C.
Attorneys for Defendants
20 Corporate Woods Boulevard
Albany, NY  12211


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

        This action arises from the February 2013 arrest of plaintiff Jessica C. Wilson

("plaintiff" or "Jessica").  Plaintiff has sued the City of Glens Falls and William F. Holmes, an

officer with the Glens Falls Police Department ("Officer Holmes") (collectively "defendants").

She asserts two federal causes of action, pursuant to 42 U.S.C. § 1983, for unlawful arrest

and excessive force.  She also brings three pendent state tort claims for false imprisonment, assault, and battery.

Defendants have filed a motion for summary judgment.  Plaintiff opposes.  The motion was considered on the submissions, without oral argument.

## II.  **FACTUAL BACKGROUND**

The following facts have been taken from the parties' Statements of Material Facts and the pleadings, affidavits, and exhibits in the record.[1]  Unless otherwise noted, the facts are undisputed.

On February 3, 2013, Jessica and her brother, Jordan Wilson ("Jordan"), were passengers in a vehicle driven by their mother, Donna Durkee–Wilson ("Donna").  The family was driving to an apartment building on Third Street in Glens Falls, New York, where Jordan resided.  When they arrived, they observed two police cars parked in front of the apartment building and several officers, including Officer Holmes, standing outside speaking with several people.  As Donna drove past the apartment building, Jordan yelled something from the car window toward the group of people.

Shortly thereafter, Donna turned the car around, returned to the apartment building, and parked across the street from where the officers and people were gathered.  Jordan, who had been drinking earlier in the day, exited the vehicle and approached the officers.  Jessica and Donna remained in the car.  After briefly speaking to Officer Holmes, Jordan was

---

[1]  Although plaintiff failed to submit a responsive Statement of Material Facts with her initial opposition papers, she did file such a document prior to the return date.  ECF No. 23.  Moreover, the factual assertions contained in her memorandum of law are supported by citations to her sworn 50-h hearing testimony and an affidavit in the record.  Those assertions are consistent with the assertions put forth in her response to defendants' Statement of Material Facts.  Therefore, the late filing and the factual assertions contained therein, will be considered.

handcuffed and placed under arrest.  Donna then exited the car and confronted Officer

Holmes about Jordan's arrest.  Officer Holmes promptly advised Donna that she too was

under arrest, and he began to handcuff her.

At that time, Jessica exited the vehicle and began screaming at Officer Holmes.  She

then retreated to the car, rolled up the windows, and locked the doors.  The parties dispute

the events preceding plaintiff's return to the car.  Defendants claim she refused repeated

commands to leave the scene, continued to walk back and forth across the street, and

locked herself in the car only after being told she was going to be arrested next.  Jessica

argues that she immediately heeded Officer Holmes's instruction to get back in the vehicle

and denies being told that she would be arrested.

Officer Holmes then approached the car and instructed her to exit the vehicle.  She

initially refused, but eventually unlocked the doors when Officer Holmes threatened to break

the window.  Officer Holmes opened the door, pulled her out, maneuvered her hands behind

her back, and placed her in handcuffs.  Defendants claim Jessica struggled and tried to pull

away from Officer Holmes as he handcuffed her.  Jessica denies resisting arrest in any

manner and claims to have injured both wrists during the incident.

Jessica was transported to the police station, where she was processed and charged

with disorderly conduct and resisting arrest.  She remained at the police station for

approximately two hours, during which her hands were re-cuffed in front of her body and one

foot was shackled to the wall.  She was ultimately issued an appearance ticket and released.

The following morning Jessica went to Glens Falls Hospital, where she was diagnosed

with an acute sprain to her right wrist.  During this medical evaluation, plaintiff claimed that

she injured her wrist when "she tripped over something and fell.  She is unsure how she

landed."  Canale Aff., Ex. D, ECF No. 18-4.

On August 20, 2013, Glens Falls City Court Judge Richard P. Tarantino granted

plaintiff's motion to dismiss both charges due to flaws in the charging document.

## III.  DISCUSSION

Defendants argue that they are entitled to summary judgment because:  (1) Officer

Holmes has probable cause to arrest Jessica; (2) Officer Holmes used a reasonable amount

of force to place Jessica under arrest; (3) Officer Holmes is entitled to qualified immunity; and

(4) plaintiff fails to show that her harm was caused by a municipal policy, custom, or practice.

### A.  Motion for Summary Judgment—Legal Standard

Defendants have moved for summary judgment pursuant to Federal Rule of Civil

Procedure 56.  The entry of summary judgment is warranted when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

(citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247

(1986).  A fact is "material" for purposes of this inquiry if it "might affect the outcome of the

suit under the governing law."  Anderson, 477 U.S. at 248; see also Jeffreys v. City of New

York, 426 F.3d 549, 553 (2d Cir. 2005).  A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of

demonstrating that there is no genuine issue of material fact to be decided with respect to

any essential element of the claim.  Id. at 250 n.4.  The failure to meet this burden warrants

denial of the motion.  Id.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553.  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## B.  Unlawful Arrest

Defendants argue that the unlawful arrest claim must be dismissed because Officer Holmes had probable cause to arrest Jessica for disorderly conduct and/or obstruction of governmental administration.

Probable cause is indeed a complete defense to an unlawful arrest claim.  Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010).  Where, as here, "an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."  Id.  Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks omitted).  The existence of probable cause is an objective inquiry that "is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest."  Id. at 153.

As relevant here, under New York Penal Law § 240.20 a person is guilty of disorderly conduct when she recklessly or intentionally causes a public inconvenience or alarm by engaging in violent behavior, making unreasonable noise, using obscene language, or congregating with other persons and refusing to comply with a lawful order of the police to disperse.  This statute "is directed at words and utterances coupled with an intent to create a risk of public disorder."  See Swartz v. Insogna, 704 F.3d 105, 111 (2d Cir. 2013) (internal quotation marks omitted).  Under Penal Law § 195.05, a person is guilty of obstructing governmental administration if she prevents or attempts to prevent a public servant from performing an official function by means of intimidation, force, or interference.  Cameron v. City of New York, 598 F.3d 50, 68 (2d Cir. 2010).

Factual disputes prevent summary judgment.  Defendants maintain that Jessica exited the car, continued to scream at Officer Holmes while walking back and forth across the street, ignored repeated commands to leave the area, and locked herself in the car to avoid being arrested.  According to Jessica, she exited the car, briefly yelled at Officer Holmes to inquire why her mother was being arrested, and then immediately retreated to the car when instructed to do so.  Such facts are insufficient to support a belief that she intended to cause a public inconvenience or interfere with the ongoing arrests.  Therefore, on plaintiff's version of the incident, probable cause did not exist to arrest her for disorderly conduct or obstructing governmental administration.  It follows that Officer Holmes did not have probable cause to arrest her for resisting arrest.

Accordingly, defendants' motion for summary judgment will be denied with respect to the unlawful arrest claim.

- 6 -

C. <u>Excessive Force</u>

Defendants next argue that the excessive force claim must be dismissed because the amount of force used by Officer Holmes during Jessica's arrest was reasonable as a matter of law.

An officer's use of force violates the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" <u>Maxwell v. City of New York</u>, 380 F.3d 106, 108 (2d Cir. 2004) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)).  This is a fact-specific determination and consideration should be given to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396.  An unreasonable use of force violates the Fourth Amendment even if it does not result in serious injury.  <u>Robison v. Via</u>, 821 F.2d 913, 924 (2d Cir. 1987).

Viewing the factual allegations in the light most favorable to Jessica, there is an issue of material fact as to the reasonableness of the force used by Officer Holmes.  Plaintiff denies ever physically resisting the officer's efforts to place her in handcuffs or trying to flee. Further, she was being arrested for a minor disorderly conduct violation, which, arguably, was not supported by probable cause.  Moreover, defendants do not claim she posed a threat to anyone.  Nonetheless, Officer Holmes threatened to break the car window, grabbed her, pulled her from the car, and twisted her hands behind her back to place her in handcuffs.  Plaintiff was diagnosed with a sprained wrist the following morning.  While the explanation she provided to hospital staff conflicts with her current allegations, such presents a credibility determination to be made by the jury.

Accordingly, defendants' motion for summary judgment will be denied with respect to the excessive force claim.

### D. <u>Qualified Immunity</u>

Officer Holmes asserts that he is entitled to qualified immunity with respect to both of plaintiff's federal claims.

It is well-settled that "[q]ualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Zellner v. Summerlin</u>, 494 F.3d 344, 367 (2d Cir. 2007) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  Even if clearly established rights were violated, "the officers will nonetheless be entitled to qualified immunity if it was objectively reasonable for them to believe their acts did not violate those rights."  <u>Id.</u> (internal quotation marks omitted). Immunity should be granted "'[i]f officers of reasonable competence could disagree' as to whether probable cause existed."  <u>Id.</u> (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).  If the material facts involved are undisputed, "the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court."  <u>Id.</u> at 368. Conversely, if pertinent facts are disputed, "the factual questions must be resolved by the factfinder."  <u>Id.</u> (internal quotation marks omitted).

Here, the right to be free from a warrantless arrest without probable cause and the right to be free from the use of excessive force are clearly established.  <u>See id.</u> (noting that "the right not to be subjected to a warrantless arrest without probable cause" is clearly established); <u>Calamia v. New York</u>, 879 F.2d 1025, 1036 (2d Cir. 1989) ("The right of an individual not to be subjected to excessive force has long been clearly established.").  The

issue thus becomes whether it was objectively reasonable for Officer Holmes to believe his acts did not violate these rights. This determination turns on the disputed material facts.

As explained above, viewing the facts in the light most favorable to Jessica, an objectively reasonable police officer would not have believed probable cause existed to arrest her for disorderly conduct or obstruction of governmental administration. Similarly, assuming plaintiff's version of the events is true, a reasonable officer would have known that pulling Jessica from the car and twisting her wrists to the point of causing a sprain violated her clearly established right to be free from the use of excessive force. This is especially so in light of Jessica's assertion that she offered no resistance whatsoever.

Therefore, Officer Holmes is not entitled to the defense of qualified immunity at the summary judgment stage. However, he may reassert this defense at trial based on the jury's ultimate determination of the facts. See Zellner, 494 F.3d at 368 ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.").

### E. Municipal Liability

Finally, defendants argue that Jessica has failed to identify any municipal policy, custom, or practice that caused her harm. In response, plaintiff merely notes that Officer Holmes has been accused of using excessive force in a separate federal action stemming from an incident that occurred in May 2011—almost two years before Jessica's arrest. This is too tenuous to establish a policy, custom, practice, or pattern of unconstitutional action attributable to the City of Glens Falls. See City of Canton v. Harris, 489 U.S. 378, 390–91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to

fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").

Therefore, all federal claims against the City of Glens Falls will be dismissed. However, the state claims against the City will remain under the theory of respondeat superior.

## IV.  CONCLUSION

There are genuine issues of material fact regarding whether Officer Holmes had probable cause to arrest Jessica on February 3, 2013, and, if so, whether he used a reasonable amount of force to effect that arrest.  However, plaintiff fails to identify anything in the record to support her conclusory assertion that a municipal policy, custom, or practice caused the alleged constitutional deprivations.

Therefore, it is

ORDERED that

1.  Defendants' motion for summary judgment (ECF No. 16) is GRANTED in part and DENIED in part;

2.  All federal claims against the defendant City of Glens Falls are DISMISSED; and

3.  The following claims remain for trial:  (1) federal unlawful arrest and excessive force claims against Officer Holmes; and (2) state claims for false imprisonment, assault, and battery against Officer Holmes and the City of Glens Falls.

IT IS SO ORDERED.

United States District Judge

Dated:  June 27, 2014
          Utica, New York.